[Civ. No. 19128. Second Dist., Div. One. Feb. 18, 1953.]

L. B. WINSTON et al., Appellants, v. JEROME W. PENNEY et al., Respondents.

Manasse & Crowley and Herbert Manasse for Appellants.

Knight, Gitelson, Ashton & Hagenbaugh, Van A. Hagenbaugh and Robert A. Eaton for Respondents.

DORAN, J.—The plaintiffs have appealed from a judgment in defendants' favor after a verdict denying recovery in a personal injury action arising out of an automobile collision which occurred on February 26, 1950, on Alameda Boulevard south of Compton.

The accident occurred after plaintiff L. B. Winston had attempted to make a U-turn at a place other than an intersection, but had not completed the turn. "His (Winston's) front wheel struck against the east curb. The motor stalled. . . . His starter was working satisfactorily but he never tried to move his car by means of the starter so that it would be parallel to the curb and within 18 inches thereof," as required by the Motor Vehicle Act. (Veh. Code, § 588(a).)

It may be noted that there is a street intersection "approximately one mile from the scene of the accident and north of it," and that another intersection is located "about one-quarter if a mile south." Mr. Winston "stated in his deposition that he started his turn from the lane next to the center line. . . . At the time of trial he stated that he started his turn from the extreme west lane. . . ." Shortly before reaching the scene of the accident, Winston "slowed down, looked for traffic from either direction, and seeing no traffic he made a signal with his left hand, turned on his blinker lights" and attempted to make the U-turn by cutting the steering wheel to the left as far as it would go, but because of the curb was unable to complete the maneuver. He testified that "he was stopped for one or two minutes."

D. A. Morelli, an instructor in physics, testified to making certain tests in respect to turning radius at the point in question, and that "if plaintiff's turn were made from the lane next to the center that it would be impossible for plaintiff to get much further around in the turn than about an 80 degree angle between the right side of plaintiff's vehicle and the east curb. If the turn were made from the westernmost lane of traffic with the wheel cramped to the left the turn could be made with three feet to spare."

There is a conflict of evidence concerning the angle at which the Winston car came to a rest. Plaintiff testified that the rear of the car was "2 or 3 feet from the curb"; other witnesses placed the distance at "from five to eight feet." Defendant estimated that the Winston car "was headed at around a sixty degree angle to the curb," and extended "about 2 to 4 feet into the lane." Another car had drawn

up behind the Winston car and stopped, according to plaintiff's testimony, "eight or ten car lengths back of him." The defendant Penney testified that this so-called "X" car was "two or three car lengths back of the Winston car."

Plaintiff's car was a black Packard sedan; defendant was driving a Chevrolet sedan at a speed of approximately 35-40 miles per hour. It was the defendant's testimony "that he saw the X car stopped in the lane . . . about 1 foot from the curb." Defendant did not slow down, "but he turned to the left to pass the X car and did pass the X car while straddling the white line . . . he started to swerve his car back into the curb lane and then for the first time his headlights picked up plaintiff's vehicle and he first noticed the Winston car. He then immediately swerved back to the left, but the right portion of his car struck the right rear portion of the Winston car." Penney and a passenger testified "that they saw no lights on the Winston Vehicle." L. B. Winston testified that "he had his lights on at all times."

 Appellants contend that "The trial court committed error in not giving a basic instruction requested by appellants, based on their theory of the case, when there was evidence in the record to support the giving of such instruction." The refused instruction was as follows: "If you find that plaintiffs' vehicle was disabled or temporarily unable to proceed prior to the accident, then I instruct you that plaintiff was not required to park parallel to the curb with the rear wheels of his vehicle less than 18″ from the curb." As authority for this instruction *Flemming* v. *Flick*, 140 Cal. App. 14 [35 P.2d 210], is cited, holding that where a rear axle broke on a grade, and embankments prevented getting the car off the highway, and a tow car further obstructed the highway, plaintiff was not negligent as a matter of law in thus blocking the highway.

Respondents' brief, answering this argument, observes that, "The instruction offered was properly refused since the element that the vehicle must have been disabled through no negligence of the plaintiffs was omitted." Considering the matter on motion for a new trial, the trial judge called attention to the fact that there was evidence "from which the jury could have found that the plaintiff, Mr. Winston, was negligent in attempting to make his turn at that point, in attempting to turn so close to the east curb that he could not complete his turn and was going to be stalled at a place

where he could not proceed without backing up and going ahead. It was not until he hit the curb that the engine stalled. . . . Your instruction did not say any such thing. It said that he was excused if his engine stalled, no matter how it stalled. I pointed this out to you . . . I told you that element was lacking, but there was no offer made to give any other instruction. However, I think the matter was fully covered by the instruction which was given twice, that he was not negligent in doing so if under all the circumstances that was excusable.''

A survey of the instructions as a whole indicates that appellants' theory of the case was properly covered, and that no prejudice could have resulted from the court's failure to give the requested instruction. As noted by the trial court, there was evidence of negligence on the plaintiffs' part in attempting to make the turn, and the weight and effect of this evidence was for the jury to decide. The requested instruction, as phrased by plaintiffs, might have led the jury to believe that such negligence, if any, was immaterial.

■ Appellants also claim that ''The jury should not have been instructed concerning the rule governing the parking of a motor vehicle on the highway,'' namely section 588 (a) of the Motor Vehicle Code, for the reason that ''there is no evidence . . . showing that appellants had ever stopped their car voluntarily,'' and that the court erred in assuming that appellants had ''parked'' the car. However, as noted by respondents, the jury was instructed that section 588 (a) requires that every vehicle be ''stopped or parked'' parallel and within 18 inches of the right-hand curb. Appellants' car was certainly ''stopped'' on the roadway. As hereinbefore indicated, whether appellants' stopping was excusable or justifiable was, under all the evidence, a question for the jury. No reversible error is here apparent.

Further complaint is made that ''The trial court erred in unduly emphasizing certain instructions . . . by repeating and stressing unfavorable aspects of the instructions so far as appellants were concerned.'' More specifically, appellant points out that the trial judge, in discussing the last clear chance doctrine, emphasized by repetition that defendant might be liable if, after acquiring actual knowledge of plaintiffs' perilous situation, he had a clear opportunity—''that means just what it says, a clear opportunity to avoid the accident,'' and that the court ''raised its voice and emphasized

this portion by voice intonation and slower phrasing.'' The jury was further told that, as to the last clear chance, ''It is not a matter of split seconds,'' but whether defendant ''did have an opportunity to avoid the accident after he became aware of the danger, and what a reasonable man would have done,'' etc., which was a matter for the jury ''to determine from all of the evidence.'' In explaining the doctrine the judge mentioned that ''Law students and judges study this doctrine a long time, and some do not understand it even then. However, I am trying to make it clear to you, ladies and gentlemen.''

Appellants' contentions in respect to this matter present no reversible error. The matter of voice intonation in giving the above instructions is not presented by affidavit, and the repetition of correct instructions so that the jury may have the matter firmly in mind, cannot be deemed either erroneous or prejudicial to the appellants' rights.

Finally, it is claimed that ''as a matter of law, appellant, L. B. Winston, under the stipulated facts, was not chargeable with any negligence which was a proximate cause of the accident.'' As hereinbefore noted, the evidence was in conflict as to various facts, and the question of appellants' negligence was for the jury to determine. It cannot be doubted that the record discloses substantial evidence in support of the verdict. No prejudicial error has been pointed out.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.